IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Derrick Tyler Mills, #978483, ) | |
| ) | Civil Action No. 6:04-22880-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Sgt. NFN Jones; Sgt. NFN Granger; ) | |
| Sgt. NFN Hardgrove;[1] and Officer S. ) | |
| Russell, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff, who is proceeding *pro se*, alleges civil rights violations while he was held as a pretrial detainee at the Lexington County Detention Center ("LCDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on November 9, 2004, alleging that the defendants violated his constitutional rights. The plaintiff named the LCDC, Sgt. NFN Jones, Sgt. NFN Granger, Sgt. NFN Hardgrove,[1] and Officer S. Russell as defendants. On February 10, 2005, the Honorable Henry F. Floyd, United States District Judge, ordered that the LCDC be dismissed from the case. On November 14, 2005, the remaining defendants filed a motion for summary judgment. By order filed November 15, 2005, pursuant to

---

[1] Incorrectly identified in the complaint as "Sgt. NFN Hardgrove."

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on November 21, 2005. On December 2, 2005, the plaintiff filed a "motion to dismiss the defendant's motion for summary judgment," which this court also construes as the plaintiff's opposition to the motion for summary judgment.

## **FACTS PRESENTED**

According to the defendants, the plaintiff was involved in an incident at the LCDC on August 2, 2003, in which Officer Gerry Scott was hit with a filled drink bottle, knocking him unconscious (Jones aff. ¶¶ 4-6). Defendant Russell investigated the matter and brought criminal charges against the plaintiff. According to Russell, the plaintiff pleaded guilty to Inciting Prisoners to Riot as a result of the incident (Russell aff. ¶¶ 4-7). The plaintiff complains of unspecified "inhumane treatment" when he was placed in lock-up after the incident (comp. 4). The plaintiff claims the incident occurred on July 2, 2004; however, the defendants claim that the correct date is August 2, 2003 (comp. 4; def. m.s.j. 1 n. 1).

The plaintiff's cell was flooded in November 2004. Defendant Hargrove, who is responsible for overseeing classification and housing at the LCDC, testified that the plaintiff was involved in the flooding of his cell. Defendant Hargrove stated that when cells are flooded, it is usually because an inmate clogs the toilet in the cell. When this happens, the cells are cleaned, and the detainees are allowed to exchange clothing, as needed (Hargrove aff. ¶¶ 10-11). The plaintiff claims he was subjected to "inhumane treatment" when he and other detainees were moved out of their cells and to another floor as a result of flooding. He claims that three detainees were placed in a one-person cell, and he had to sleep on the floor. He further claims that the toilets backed up repeatedly and flooded

the cells. He claims he got "some type of fungus" as a result of the conditions, and he was fearful of contracting a disease (comp. 3-4).

The plaintiff alleges that he had medical problems associated with construction at the LCDC, claiming that these problems stemmed from exposure to asbestos (pl. comp. 3). The defendants submitted the affidavit of Alan Paavel, the Commander of the LCDC, who testified that to his knowledge there is no known asbestos at the LCDC (Paavel aff. ¶ 4). The defendants also submitted the affidavit of Wanda Tarrance, a nurse who serves as the Medical Supervisor at the LCDC. She testified that the plaintiff had a chest x-ray on September 30, 2004, and that the x-ray indicated that the plaintiff had a slight enlargement of his heart. However, Tarrance further testified that to her knowledge this enlargement was not caused by exposure to asbestos (Tarrance aff. ¶¶ 1-7). She stated that the plaintiff "refused medications on a fairly regular basis," but that he did "receive substantial medical care while detained at LCDC" (Tarrance aff. ¶¶ 8-9). After reviewing the plaintiff's medical records, Tarrance testified that the plaintiff was never charted as needing medical care from exposure to asbestos as he alleges (Tarrance aff. ¶ 10).

Dr. Jeffrey Ford, a physician practicing in the area of pulmonary medicine, testified that he had reviewed the plaintiff's medical records, which showed that he had made several complaints regarding chest pain. In Dr. Ford's opinion, the defendants treated the plaintiff's complaints properly and in accordance with the standard of care for such complaints. With regard to the plaintiff's claim that the pain was a result of exposure to asbestos, Dr. Ford stated that it is accepted within the medical community that it takes between seven and ten years to develop asbestosis following exposure to high levels of asbestos, and chest pain is not a symptom of recent exposure to asbestos. Dr. Ford further testified that a "single exposure to asbestos does not result in symptoms of chest pain, or any other symptom [the plaintiff] presented with" (Ford aff. ¶¶ 1-7).

In his response to the motion for summary judgment, the plaintiff alleges generally that "medical treatment was needed" because of asbestos and refers to the facts as alleged in his complaint (pl. 12/2/05 resp. m.s.j. 2). In his complaint, the plaintiff alleged that he suffered chest pains, dizziness, and shortness of breath due to exposure to asbestos. He further claimed that the defendants failed to properly treat his symptoms (comp. 3). Neither of the parties submitted the plaintiff's medical records.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff first alleges that the defendants were deliberately indifferent to his serious medical needs. "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious

medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff has failed to show either a serious medical need or that the defendants were deliberately indifferent to his need. The evidence indicates that there is no known asbestos at the LCDC. Further, according to Nurse Tarrance, the plaintiff did not have any medical condition related to exposure to asbestos that required any form of treatment. Further, Dr. Ford testified that the symptoms of chest pain do not indicate recent exposure to asbestos. It appears from the evidence submitted that the plaintiff received adequate medical treatment for his complaints. Based upon the foregoing, this claim fails.

The plaintiff has also alleged that the conditions of his confinement during renovations to the LCDC and following the flooding of his cell were inhumane. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S.

520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

The defendants argue that it was necessary to house detainees in closer proximity than is usually the practice during the construction process due to the LCDC's desire to protect the health and safety of the detainees. The defendants further argue that many of the complaints regarding the confinement conditions were brought about by the plaintiff because he intentionally flooded his cell. As the plaintiff has failed to establish the required elements, the claim fails.

Next, the defendants argue that the record fails to reflect personal involvement of the defendants and, further, the record does not show the elements necessary to establish a claim under a supervisory theory. This court agrees. The plaintiff has failed to allege that the individual defendants, who are all supervisors at the LCDC, personally acted or failed to act in violation of his constitutional rights. The doctrine of *respondeat superior* generally is inapplicable to §1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's

response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).  The plaintiff has failed to show that the subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury.  Further, there is no evidence that these defendants were indifferent to or authorized any such conduct.

The defendants also argue that they are entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  *Wilson*, 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist."  *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

s/William M. Catoe  
United States Magistrate Judge

March 7, 2006

Greenville, South Carolina